CHARLES O. MIDDLETON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38069. Promulgated February 9, 1932.

*Melvin D. Wilson, Esq.*, for the petitioner.
*J. A. Lyon, Esq.*, and *E. L. Updike, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $12,744.47 in the petitioner's tax liability for the year 1923. He now concedes that he erred in failing to allow a deduction of $7,205.38. The only remaining issue relates to an alleged loss of $20,000. The Commissioner, in determining the deficiency, added $20,000 to the petitioner's reported income as "Loss in White Star Plaster Company." He explained this adjustment as follows:

Loss on the investment in the White Star Plaster Company has been disallowed inasmuch as the company was not adjudicated bankrupt until 1925 and the loss was not definitely determined until that time.

We have heretofore pointed out that such explanations in the deficiency notice do not frame the issues. *Edgar M. Carnrick*, 21 B. T. A. 12. Cf. *Charles F. Ayer*, 7 B. T. A. 324; affd., 26 Fed. (2d) 547. The assignment of error is that the Commissioner "erred in failing to allow as a loss in 1923, the amount of $20,000 on the White Star Plaster Company stock." The Commissioner denied that he had so erred. The issue is plain—Did the Commissioner err in that he has denied the petitioner a loss to which the latter is entitled? The responsibility for having the record contain proof of facts showing the petitioner's right to the deduction rests upon the petitioner. This proof should disclose the basis for loss in respect to the stock in question and also the circumstances indicating that a loss not compensated for was actually sustained in 1923, as opposed to any other year, in a transaction entered into for profit. Section 214 (a) (4), Revenue Act of 1921. The petitioner's counsel does not seem to have been misled as to this burden, for he offered proof intended to show the necessary facts.

The petitioner is an individual who resides in Los Angeles, California. He was the owner in 1923 of 200 shares of the stock of the White Star Plaster Company.

The parties stipulated the following:

The White Star Plaster Company was a Nevada corporation organized October 30, 1916, with an authorized capital stock of $250,000, all of which was

issued on December 1, 1916, for mining property, building and machinery formerly owned by the Arrowhead Plaster Company, a bankrupt corporation. Operations were not commenced until October 1, 1919, and losses were sustained each year as follows:

December 31, 1919, Loss_____ $23, 315. 77
"    "    1920    "    _____ 15, 173. 81
"    "    1921    "    _____ 106, 608. 67
"    "    1922    "    _____ 57, 189. 66
"    "    1923    "    _____ 104, 372. 80

The books of the White Star Plaster Company show assets and liabilities during the period as follows:

| | December 31, 1920 | December 31, 1921 | December 31, 1922 | December 31, 1923 |
|---|---|---|---|---|
| **ASSETS** | | | | |
| Cash | $670. 07 | $19, 611. 45 | $7, 497. 23 | $8, 713. 87 |
| Accounts and notes receivable | 6, 477. 03 | 6, 931. 03 | 14, 423. 43 | 22, 629. 27 |
| Inventory | 5, 321. 46 | 6, 234. 21 | 6, 283. 01 | 4, 944. 22 |
| Bonds in treasury | | 9, 000. 00 | 9, 000. 00 | 9, 000. 00 |
| Deferred charges | | 9, 273. 03 | 5, 853. 37 | 2, 393. 56 |
| Unamortized bond discount | | 76, 385. 49 | 58, 565. 73 | 38, 011. 24 |
| Land | 208, 240. 43 | *417, 403. 27 | 417, 403. 27 | 417, 403. 27 |
| Buildings | 105, 074. 88 | 129, 092. 55 | 130, 428. 35 | 132, 080. 46 |
| Machinery and equipment | 85, 971. 59 | 99, 590. 25 | 121, 466. 08 | 155, 061. 89 |
| Furniture and fixtures | 2, 394. 79 | 3, 078. 07 | 4, 645. 60 | 5, 488. 86 |
| Other property | 725. 00 | 473. 00 | 23, 997. 74 | 11, 110. 19 |
| Sacks | 2, 592. 00 | 30, 674. 00 | 27, 774. 00 | 37, 616. 40 |
| Automobiles | | | 800. 00 | 1, 250. 00 |
| Miscellaneous | 493. 82 | 2, 219. 17 | 398. 06 | 145. 00 |
| Sinking fund | | 3, 009. 00 | | |
| Total | 416, 461. 07 | 812, 927. 52 | 923, 615. 87 | 845, 391. 02 |
| **LIABILITIES** | | | | |
| Accounts and notes payable | 141, 582. 74 | 202, 283. 89 | 237, 669. 53 | 328, 066. 94 |
| Accrued expenses | | | 13, 850. 76 | 22, 790. 54 |
| Mortgage bonds | 38, 000. 00 | 250, 000. 00 | 242, 000. 00 | 234, 500. 00 |
| Reserve for compensation insurance | | | 2, 459. 77 | 2, 822. 62 |
| Reserve for sacks | | | 15, 000. 00 | 17, 371. 67 |
| Reserve for depletion | | 911. 10 | | |
| Reserve for depreciation | 25, 367. 91 | 47, 830. 00 | 69, 923. 72 | 97, 534. 16 |
| Capital stock | 250, 000. 00 | 250, 000. 00 | 250, 000. 00 | 250, 000. 00 |
| Deficit | (38, 439. 58) | (145, 098. 25) | (202, 267. 91) | (306, 660. 71) |
| Surplus by appreciation | | 200, 000. 00 | 200, 000. 00 | 200, 000. 00 |
| Total | 416, 461. 07 | 812, 927. 32 | 828, 615. 87 | 845, 091. 02 |

*Includes appreciation of $200,000.00.

The gross sales of the White Star Plaster Company amounted to $118,671.50 for 1920, and to $220,662.09 for 1923.

A petition in bankruptcy against the White Star Plaster Company was filed in the United States District Court at Los Angeles on October 12, 1925. This petition stated that the liabilities amounted to $747,801.00, and assets to $1,085,000.00.

The petition in bankruptcy states that the assets amounted to $1,085,000 but the petitioner does not admit that the assets had such value.

Bonds aggregating $95,000.00 were due and payable December 1, 1923, by the White Star Plaster Company. They were not paid, up to and including December 31, 1923.[1]

---

[1] From other evidence it appears that only $9,500 par value of bonds were due and payable on December 1, 1923. The stipulation contains incorrect addition.

Three certificates were received in evidence, number 22 for 100, number 23 for 40, and number 24 for 60 shares. Each is dated December 1, 1916, and bears a seal stating " White Star Plaster Company, Nevada, incorporated October 30, 1916." Each " certifies that First National Bank, as pledgee of Chas. O. Middleton is the owner." On the back of each is an assignment dated May 5, 1921, from First National Bank of Los Angeles, pledgee Chas. O. Middleton to Chas. O. Middleton.

The petitioner was his own principal witness. We are unable to reconcile his testimony on many important points with the stipulation and the stock certificates, and as a consequence, we are unable to find facts which show his right to the claimed loss. The certificates were received in evidence without objection when the petitioner first took the stand. The stipulation was read into the record after the testimony was in. If there was any possible reconciliation of the apparent discrepancies, the petitioner's counsel should have brought it out and, having failed to do so, the petitioner must stand the consequences. There was here no *prima facie* showing which cast any burden upon the respondent. The petitioner testified that he first purchased fifty shares for $5,000 late in 1912 or early in 1913; shortly after that ten shares were sent to him and his bank account debited $1,000; later he bought forty shares for $4,000; finally, " when the mill was ready to start—I don't remember whether that was 1913 or 1914—they had no money to start the mill," so he was pursuaded to take 100 shares until two other subscribers could take these shares. He said he pledged his 200 shares at the First National Bank to secure a loan of the $10,000 needed and the two subscribers never relieved him of the 100 shares.

If the discrepancy were only as to the dates, we might think that the petitioner was merely confused as to the time when he acquired the 200 shares of White Star Plaster Company stock, but there are other discrepancies. The stipulation states that all of the authorized capital stock of the White Star Plaster Company was issued on December 1, 1916, for mining property, building and machinery formerly owned by the Arrowhead Plaster Company, a bankrupt corporation. The petitioner's certificates are dated December 1, 1916. The White Star Plaster Company did not start its operations until the latter part of 1919, yet, the petitioner testified that in 1913 or 1914 he provided $10,000 to " start the mill." At another time he testified that the property was being operated at the time he bought his original stock. He speaks of meeting the representative from whom the machinery was bought and of the building of a spur track by the Union Pacific Railroad Company, as if these things were being done at or about the time he made his original investment. There are

other statements in his testimony which rather indicate that he made his original investment of $20,000 in connection with this particular gypsum deposit at some time prior to the date upon which the White Star Plaster Company came into existence. If this is so, his original investment is not the basis for loss on the White Star Plaster Company stock. After considering all of the evidence, we are unable to find from the record that the petitioner paid $20,000 or any other particular amount for the 200 shares of White Star Plaster Company stock which he held in 1923. This circumstance alone is fatal to the petitioner's contention.

There is at least one other reason, however, why he must fail. He cites a part of article 144 of Regulations 62. This article provides, first, that the owner of stock may not deduct a loss representing shrinkage in value, but is allowed only the loss actually suffered when the stock is disposed of. It continues as follows:

However, if stock of a corporation becomes worthless, its cost or other basis determined under section 202 may be deducted by the owner in the taxable year in which the stock became worthless, provided a satisfactory showing of its worthlessness be made, as in the case of bad debts.

The quoted part of this regulation means that before the Commissioner will allow a loss based on the alleged worthlessness of stock, the worthlessness of the stock must be demonstrated to him satisfactorily, as in the case of bad debts. But it does not mean that a loss on stock is to be allowed for the year in which the owner ascertains its worthlessness and charges it off his books. Losses are deductible only in the year in which sustained. In the case of a loss of an investment in stock, this usually necessitates the proof of the occurrence in the taxable year of some identifiable event from which the worthlessness of the stock dates. *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398.

We have searched the present record in vain for proof of the occurrence of such an event in the year 1923. The petitioner never received any dividends on his White Star Plaster Company stock. The company operated at a loss in 1923, but that was nothing new for it had always operated at a loss and its loss for 1921 was even larger than its loss for 1923. It is true that the steady accumulation of losses might discourage a reasonable person at some time, but we see no reason to say that this event occurred in 1923 as opposed to some other year. We do not know what happened in 1924, but in 1925 the company went into bankruptcy. The petition in bankruptcy stated that the assets were largely in excess of the liabilities. The petitioner does not admit the truth of this statement, but we do not know whether or not it was true. One of the petitioner's customers started building its own plaster mill in 1922. This mill was

488

finished at some time in 1923. The purchases of this company from the White Star Plaster Company were much less in 1923 ($44,636.05) than they were in 1922 ($170,814.90). We do not know what the gross sales of the White Star Plaster Company were in 1922, but it has been stipulated that in 1923 they amounted to $220,662.09. This customer was apparently a rather important one, but the falling off in its purchases does not show that the stock of the White Star Plaster Company became worthless in 1923. The only other thing which occurred in 1923 was that $9,500 par value of bonds came due on December 1, 1923. We know that these were not paid at the end of the year, but we can not conclude from this fact that the stock became worthless within the year. The petitioner stated that he never knew anything about the plaster business himself, but went into it on the strength of the representations of a banking associate. He testified that he had been away from Los Angeles for about three years, during which time he did not know much about the affairs of the White Star Plaster Company, but when he returned, probably at some time in 1922, he read in the paper that this customer was going to build its own mill. He then had a lawyer make an investigation of the White Star Plaster Company. This lawyer was never called as a witness, although the petitioner's counsel stated during the cross-examination of the petitioner that he was going to call this witness. It appears from a letter introduced by the respondent that this attorney wrote the petitioner on March 5, 1923, but this does not constitute proof of the facts or conclusions stated in the letter of March 5, 1923. At some undisclosed date the president of the customer above mentioned refused to buy the petitioner's stock at any price. In claiming the worthlessness of the stock as a loss deduction from his income for 1923, the petitioner undoubtedly relied upon the investigation and statements of persons who have not testified in this case. We do not know that any person informed of the true facts and with ability to judge ever came to the conclusion that this stock became worthless in 1923. Even if we were convinced that the petitioner suffered a loss of some certain amount on this stock, we would be unable to conclude, contrary to the determination of the Commissioner, that the loss was sustained in 1923.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

LANSDON, MARQUETTE, and TRAMMELL dissent.